IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**ANTHONY ROWAND**

**personally, and on behalf of all others similarly situated,**

     Plaintiff,

v.

**CITY OF MORGANTOWN, WEST VIRGINIA**

     Defendant.

ELECTRONICALLY FILED
Apr 22 2024
U.S. DISTRICT COURT
Northern District of WV

Civil Act. No.: 1:24-cv-41 (Kleeh)

**VERIFIED CLASS ACTION COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF**

**and**

**INDIVIDUAL COMPLAINT FOR DAMAGES**

### Introduction

1. In recent years, some communities—motivated by a desire to stop the poor and unhoused from soliciting donations in highly-visible public locations—have passed laws seeking to outlaw being present in traditional public forums while exercising some or all types of protected speech. Federal courts around the country have repeatedly struck down laws of this type as violative of basic rights guaranteed by the First Amendment to the United States Constitution. This case presents such a controversy.

2. Plaintiff brings this action under 42 U.S.C. § 1983 and the First and Fourteenth Amendments to the United States Constitution, for declaratory and injunctive relief against the City of Morgantown, West Virginia (the "City"), in response to the City's adoption and ongoing enforcement of such a law: Morgantown City Ordinance Section § 371.10 ("the Ordinance").

3. Enacted in 2005 to stop so-called "panhandling," the Ordinance prohibits persons from using the spoken, written, or printed word, bodily gestures, signs or other means to solicit immediate donations of money or other things of value or soliciting the sale of goods or services from persons in vehicles traveling on a public right of way.

4. Sporadically enforced in the past, recent political efforts to push the unhoused and the poor from the City and from Monongalia County have reinvigorated City enforcement of the Ordinance against persons like the Plaintiff, who was recently and is currently being repeatedly ticketed and prosecuted under the Ordinance for exercising First Amendment rights protected by the United States and West Virginia Constitutions.

5. The Ordinance facially outlaws only certain, disfavored, content-defined speech within long-used traditional public fora; improperly limits or prohibits protected speech; and is not narrowly tailored to alleviate real, concrete, and valid public concerns.

6. The content-based Ordinance does not serve a valid or compelling governmental interest.

7. The Ordinance cannot pass strict scrutiny review under the First Amendment. It is unconstitutional and void.

8. Plaintiff now brings this action on behalf of Plaintiff and all persons situated similarly to declare that unconstitutionality and to enjoin, preliminarily and permanently, its future enforcement by the City against Plaintiff or the members of the putative class.

9. Plaintiff also seeks damages in his individual capacity only for injuries already inflicted upon him by the City's unconstitutional infringement and deprivation of his fundamental rights.

## Jurisdiction

10. This Court has jurisdiction over the federal claims made by Plaintiff under 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3) and (4).

11. Venue is proper in the Northern District of West Virginia because the events at issue occurred here and because the Defendant is properly subject to service here.

## Parties

12. Plaintiff Anthony Rowand is a resident of Monongalia County. He is not employed and does not receive any form of cash public benefit or Social Security income. For most of the last two years, Mr. Rowand has had to rely on personally soliciting donations and charity from the public to muster the funds needed to cover his basic needs, including food and transportation, as well as the basic needs of his disabled girlfriend.

13. Defendant the City of Morgantown is a governmental entity operating as a municipal corporation under the laws of the State of West Virginia within a specified geographical area of Monongalia County.

14. At all relevant times, the Morgantown City Council has been the legislative arm of that entity, possessing and exercising final City authority and power to enact official policy and law governing actions by the City and its employees (including the Morgantown City Police Department) and to enact criminal and civil laws to direct and control the actions of individuals such as Plaintiff and the members of the putative class within Morgantown's city limits.

15. The Morgantown City Council, in that capacity and pursuant to that authority, officially enacted the unconstitutional Ordinance at issue in 2005 as a formal policy and governing law of the municipality, doing so with a purpose to prevent and/or punish unhoused and other

persons from panhandling for donations in public areas, by having the Morgantown City Police ticket and prosecute Plaintiff and others like him under the Ordinance.

## Class Allegations

16. Plaintiff brings this action for declaratory and injunctive relief personally and on behalf of a class of persons similarly situated, pursuant to *Federal Rules of Civil Procedure* 23(a) and 23(b)(2). The class is defined to include all persons who, on or after **April 22, 2022,** do or will attempt to use or use the spoken, written, or printed word, bodily gestures, signs or other means to solicit immediate donations of money or other things of value or the sale of goods or services from persons in vehicles traveling on a public right of way within the jurisdiction of the City of Morgantown, West Virginia.

17. Joinder of every member of the class as an individual party to this litigation is impractical. On information and belief, during any one week 8 – 10 putative class members customarily solicit immediate donations from motorists at various public locations within the City to provide themselves with money for the basic needs of life.

18. The number and identity of putative class members engaged in such protected activity at any one time are unpredictable and fluctuate depending on need and personal choices. Engagement in that protected activity lasts for varying, often relatively short periods of time, and customarily occurs at many different public areas spread over the geographical area of the City.

19. Moreover, many of the persons who engage or attempt to engage in such protected speech often lack a fixed abode to which service of court documents could be directed, a fact which by itself would make it difficult or impracticable to individually join each such person as a party to this action.

20. Further, membership in the class is fluid as individuals within the proposed class definition regularly exercise their constitutional right to travel into and away from the City.

21. Additionally, the class includes future members who cannot now be identified and joined.

22. There are questions of law or fact common to the class.

23. Common questions of fact include the nature, characteristics, and extent of the City's policies and customs in applying the Ordinance against Plaintiff and others in the putative class.

24. Common questions of law include whether the Ordinance is facially unconstitutional; whether the Ordinance is unconstitutional as actually applied to Plaintiff and others similarly situated; whether the City's justification for the content-based Ordinance meets its heavy burden under strict scrutiny; and whether the class is entitled to preliminary and permanent injunctive relief enjoining the Ordinance's enforcement.

25. Plaintiff's claims are typical of the claims of the class as a whole. Plaintiff has been prosecuted repeatedly under the Ordinance for exercising his protected rights but has no practical means of providing for his needs and those of the woman dependent upon him save through the very panhandling the Ordinance outlaws.

26. Plaintiff therefore faces a continuing and substantial threat from the Ordinance and the continuing likelihood of future prosecutions for the exercise of free speech rights granted him by the United States Constitution, the same violation of rights Plaintiff challenges on behalf of the class as a whole.

27. Plaintiff will fairly and adequately represent and advance the interests of the class. By filing this action, Plaintiff has displayed a strong interest in vindicating the rights of all who

face similar harm from enforcement of the unconstitutional Ordinance by the City. Plaintiff must prevail to end the continuing criminalizing and chilling of his own constitutional rights. By pursuing an end to that infringement, Plaintiff will also be advancing and proving the claims and rights of absent class members.

28. There are no antagonistic interests between Plaintiff and the absent members of the class.

29. The equitable relief sought by the Plaintiff seeks to benefit and will benefit the class generally, and declaratory and injunctive relief is an appropriate remedy for the class claims Plaintiff asserts.

30. Furthermore, the Plaintiff is represented by Mountain State Justice, Inc., a non-profit, public interest legal services firm with long and substantial expertise in class litigation on behalf of low-income West Virginians. Counsel for the putative class are knowledgeable of the issues and class action requirements involved in litigation of this type, and are skilled in conducting civil rights litigation in the federal courts, including the prosecution and management of class action litigation.

31. Defendant acted or refused to act on grounds generally applicable to the class, thereby making appropriate final equitable relief with respect to the class as a whole.

## FACTS

**Morgantown City Ordinance**

32. In 2005, the Morgantown City Council officially enacted Morgantown City Ordinance Section 371.10 as a formal City policy to prohibit certain forms of speech in public fora, specified as follows:

> **Sec. 371.10. - Solicitation of persons traveling in vehicles on public rights-of-way prohibited.**

  (a) For purposes of this Code section, "solicit", "solicitation" or "soliciting" shall mean asking for money or objects of value, with the intention that the money or object be transferred from the occupant of a vehicle within a public roadway to the solicitor at that time, and at that place. "Soliciting" shall include using the spoken, written, or printed word, bodily gestures, signs or other means with the purpose of obtaining an immediate donation of money or other thing of value or soliciting the sale of goods or services.
  (b) It shall be unlawful for any person, while standing in any portion of a public right-of-way to solicit business, or contributions of money or other property, from any person traveling in a vehicle within a public right-of-way; provided, however, that the foregoing prohibition shall not apply to services rendered in connection with emergency repairs requested by the operator or passengers of such vehicle.
  (c) Having received a license or permit from the City to conduct solicitation, peddling, or other municipal regulated activity within the City shall not constitute an exception to the solicitation activities prohibited by this Code section.
  (d) Any person violating this Code section shall be guilty of a misdemeanor and subject to a minimum fine of $50.00 and a maximum fine of $500.00.
  Severability is intended throughout and within the provisions of this section. If any section, sentence, clause or phrase of this section is held invalid or unconstitutional by a court of competent jurisdiction, then such judgement shall in no way affect or impair the validity of the remaining portions of this section. This section shall be effective upon date of adoption.

(Ord. No. 05-21, 7-19-2005.)

33. The term "public right of way" is not expressly defined by the Ordinance or elsewhere in the City Code. In establishing a street or road for vehicular traffic, the "right of way" is commonly considered the wider publicly owned or controlled portion of land between the side boundaries of the private land to which the street or road abuts, only a part of which will constitute the actual roadbed upon which traffic is expected to operate. The "public right of way" therefore is the factual equivalent of "street or highway" and "road" as those terms are defined in the West Virginia Code, and therefore includes curbs, verges, shoulders, medians, and other public areas within the right of way next to or near, but not in, the roadbed itself.

34. Historically, areas within public rights of way such as those covered by the Ordinance have been public fora in which individuals may exercise their First Amendment rights

by expressive actions intended to communicate directly with those passing by, including through display of political, religious, or other signs; preaching, speeches, or the display of public greetings by political candidates; leafletting, the solicitation of donations or roadside sales of flowers, etc. *See Reynolds v. Middleton*, 779 F.3d 222, 225 (4th Cir. 2015); *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 555 (4th Cir. 2013); *Warren v. Fairfax Cnty*, 196 F.3d 186, 196 (4th Cir. 1999) (*en banc*) ("Median strips, like sidewalks, are integral parts of the public thoroughfares that constitute the traditional public fora.").

35. It cannot be disputed reasonably that panhandling and the solicitation of immediate charitable contributions constitute speech protected by the First Amendment to the United States Constitution no less than the protections the Constitution affords political or religious solicitation. *See Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 553 (4th Cir. 2013), cited as controlling by *Reynolds v. Middleton, ibid*. at 225.

36. Facially, the Ordinance is content-based. It bars persons from using the public fora of streets and roads within the City of Morgantown for expressive purposes only if the speech consists of solicitations for immediate donation of money or property, or business consisting of the sale of goods or services.

37. The Ordinance does not bar persons from using the same public fora of streets and roads within the City of Morgantown for speech touting a political candidate, attendance at a public event, the distribution of handbills or leaflets to vehicle riders which promote or criticize a public figure or issue or a religion or religious institution.

38. Because the Ordinance treats disfavored speech less favorably than other equally protected forms of speech, it enacts a constitutionally suspect criteria and is not justified by any compelling or valid municipal interest.

39. Moreover, even were the Ordinance content-neutral, it is not narrowly tailored to alleviate any real, concrete safety concerns. Further, the Ordinance unnecessarily burdens speech in circumstances where no real safety concerns exist, such as solicitation of persons in vehicles parked along the street or already stopped in the street by traffic controls or other impediments to continuing travel.

40. Enacted under color of state law, the Ordinance impermissibly burdens the free exercise of the First Amendment rights of the Plaintiff and the putative class in violation of the First and Fourteenth Amendments to the Constitution, as actionable pursuant to 42 U.S.C. § 1983.

41. Although demand has been made upon the City to repeal Section § 371.10 or to enter into a binding and irrevocable agreement to cease all and any enforcement thereof now and in the future, the City has not done so. Plaintiff and the members of the plaintiff class face a continuing threat of prosecution under the Ordinance if they exercise their rights to solicit donations on the streets and roads within the City as is necessary for them to constitute or supplement meager incomes.

42. Plaintiff and the absent members of the plaintiff class therefore face irreparable harm from enforcement of the Ordinance against them, for which they lack any adequate remedy at law.

**Plaintiff Anthony Rowand**

43. Anthony was born in Camden, New Jersey, but has been transient for approximately the last 25 years of his life.

44. Anthony has lived in the Morgantown area for approximately two and a half years. When he first arrived in Morgantown, Anthony worked as an electrician. However, he has not had regular employment for some time.

45. Anthony is not housed but has been able to live in the same location in Monongalia County for many months.

46. Anthony lives with and supports his girlfriend, Danielle, who is also unhoused. Anthony and Danielle have been partners for approximately two years.

47. Lacking any other source of income, Anthony must solicit donations from others to obtain cash to purchase food and other necessities of life for himself and Danielle. Anthony regularly solicits motorists along City streets to obtain these donations.

48. Anthony uses a sign when he solicits donations. His sign says simply "homeless anything helps thank you, god bless."

49. Many people who donate to him do so repeatedly. Anthony believes their regular donations may be related to their religious beliefs or practices.

50. Upon information and belief, the City's 2005 Ordinance had not been regularly enforced in recent years; however, starting in the summer of 2023, Anthony began receiving tickets and fines under the Ordinance after the Morgantown City police began more vigorous enforcement of the Ordinance against persons exercising their First Amendment rights in ways prohibited by the Ordinance.

51. Anthony received his first citation under the Ordinance on June 2, 2023, while soliciting donations from cars waiting at a traffic light near Hornbeck Road within the Morgantown city limits.

52. Anthony often panhandles at or near this same location since it affords an area where he need not stand in traffic, experiences a good volume of traffic, and has a turning lane controlled by a traffic light to present a line of stopped drivers to whom he can show his sign and obtain donations without holding up traffic or requiring traffic to stop for him.

53. Anthony was surprised when he was ticketed the first time since he had been soliciting donations in Morgantown, and at this location, for a considerable time prior to June 2, 2023, and had never before received a citation for doing so.

54. The City is not required to appoint defense counsel for persons cited under the Ordinance since it provides only for the imposition of fines. As an indigent, Anthony has never had the ability to hire an attorney practicing criminal law to assert his constitutional rights as a defense to prosecution by the City under the Ordinance. Lacking an ability to present his best defense, and having to concede that he was panhandling when he was ticketed, Anthony pled guilty and was fined $218.75.

55. Anthony has not paid this original fine, because he is indigent and lacks the ability to do so.

56. On October 7, 2023, Anthony was again cited under the Ordinance while soliciting motorists for donations for the support of himself and Danielle by displaying his sign in a public area within the city limits of Morgantown. Again, plaintiff pled no contest. On this occasion, he was ordered to pay $100.00 in fines and court costs.

57. Plaintiff has not paid that $100.00 because he is indigent and lacks the ability to pay it.

58. On November 13, 2023, while soliciting motorists for donations for the support of himself and Danielle by displaying his sign in a public area within the city limits of Morgantown, Anthony was again cited under the Ordinance by the Morgantown City Police.

59. Anthony pled no contest to this citation and was ordered to pay $100.00 in fines and court costs.

60. Plaintiff has not paid that $100.00 because he is indigent and lacks the ability to pay it.

61. On November 26, 2023, while soliciting motorists for donations for the support of himself and Danielle by displaying his sign in a public area within the city limits of Morgantown, Anthony was again cited under the Ordinance. Again, Anthony pled no contest and was ordered to pay $100.00 in fines and court costs, a sum he has not paid because he is indigent and lacks the ability to pay it.

62. On December 28, 2023—three days after Christmas—Anthony was cited under the Ordinance while soliciting motorists for donations for the support of himself and Danielle by displaying his sign in a public area within the city limits of Morgantown. Again, Anthony pled no contest and was ordered to pay $100.00 in fines and costs, an amount he has not paid because he is indigent and lacks the ability to pay it.

63. On January 14, 2024, while soliciting motorists for donations for the support of himself and Danielle by displaying his sign in a public area within the city limits of Morgantown, Anthony was cited under the Ordinance *twice* by the same officer.

64. Anthony once again pled no contest and was assessed a $100.00 in fines and costs for each citation.

65. On February 12, 2024, while soliciting motorists for donations for the support of himself and Danielle by displaying his sign in a public area within the city limits of Morgantown. Anthony was again cited under the Ordinance, pled no contest, and was fined.

66. Anthony continues to regularly be cited for violating the Ordinance while doing nothing more than soliciting immediate donations to support his basic needs by standing in a public forum showing his sign and accepting the charity offered him by stopped motorists.

67. Other class members using speech or signs to solicit motorists for immediate donations of cash while standing in a public area within the city limits of Morgantown have similarly been ticketed and prosecuted under the Ordinance during this same time period.

68. In addition to the fact of the citation itself, City police officers have begun to use the times during which they ticket him as opportunities to harass and attempt to embarrass him.

69. Since last June, City law enforcement officers have, for example, pulled their police cars to a sudden stop in the median right in front of him, causing Anthony momentary fear of being injured.

70. At various times, City officers have told him to put his sign on the ground and lean up against the patrol car have taken his sign away; or have ripped it up in his presence.

71. Despite knowing little if anything about Anthony or why his circumstances make traditional employment impracticable for him, City law enforcement officers have used insulting tones to tell Anthony to "go get a job."

72. Anthony does not have personal identification documents, making it nearly impossible for him to obtain formal employment. Anthony has worked previously, holding 20-30 different jobs over his lifetime, starting at age 18.

73. As clearly shown by these events, Anthony has been punished repeatedly under the Ordinance and harassed by City law enforcement officers for the exercise of his constitutionally protected rights to engage in free speech in a public forum.

74. Anthony must continue to exercise his free speech rights to stand in a public forum and seek immediate donations of money through display of his sign because that is the only method practically available to him to obtain the funds required to support himself and his girlfriend.

75. As Anthony must continue to exercise his protected rights in this fashion, the pattern of these events proves he is continuing to face prosecutions and harassment under the Ordinance for actions in which he has a constitutional right to engage, the Ordinance and its continuing enforcement by the City therefore having a continuing and substantial chilling effect on his constitutionally protected interests, for which Anthony lacks any adequate remedy at law.

76. Although Anthony continues to solicit donations, he has had to reduce the time spent doing so in an attempt to escape prosecution and harassment under the Ordinance, to his loss.

77. Furthermore, because he has been ticketed and fined multiple times under this Ordinance, Anthony has accumulated a substantial number of fines that he is unable to pay. He is uncertain of how or whether the City will attempt to collect these unpaid fines, and is fearful that the City might attempt to jail him for non-payment despite his indigency, leaving no one to care for Danielle.

78. The City's ongoing enforcement of the Ordinance constitutes a continuing unlawful restraint and infringement of Anthony's constitutional rights, making it very difficult for him to make ends meet financially and adversely impacting his income and his quality of life, and for which he lacks an adequate remedy at law.

79. Anthony constantly worries and is fearful of further prosecutions under the Ordinance, never certain whether interaction with City law enforcement will result in harassment and verbal abuse, a citation, a fine, or some harsher consequences.

80. The enforcement of the Ordinance has also negatively impacted his relationship with Danielle, as both are worried about the continuing prosecutions of him for exercising his constitutional speech rights and about the increased difficulty of making ends meet in the face of multiple, continuing enforcements of the City's unconstitutional Ordinance.

**COUNT I: Class Claim for Declaratory and Injunctive Relief**
**VIOLATIONS OF THE FIRST & FOURTEENTH AMENDMENTS**
**TO THE UNITED STATES CONSTITUTION**
**(42 U.S.C. § 1983)**

81. Mr. Rowand incorporates and re-alleges, by reference, the allegations of the previous paragraphs of the complaint.

82. As established by the facts and events set forth fully above, under color of state law the City has violated and continues to violate rights, privileges, and immunities granted the Plaintiff and the absent members of the putative class by the First and Fourteenth Amendments to the United States Constitution by enacting and enforcing Morgantown Municipal Ordinance Section § 371.10, in violation of 42 U.S.C. §1983.

83. The First Amendment secures the free speech rights of those who, like Anthony and other putative class members, must solicit donations to pay for food, transportation, shelter, and other essentials of life.

84. Panhandling and the soliciting of charitable contributions constitute speech protected by the First Amendment to the United States Constitution no less than the protections the Constitution affords political or religious solicitation. *See Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 553 (4th Cir. 2013).

85. In enacting and enforcing Morgantown Municipal Ordinance § 371.10, Defendant has violated the right of Mr. Rowand and absent class members, including by:

   a. Restricting the ability of class members to solicit charitable donations in traditionally public fora;

   b. Citing, fining, and/or otherwise punishing class members for engaging in protected First Amendment speech; and

    c.    Attempting to harass, embarrass, and/or otherwise dissuade class members from engaging in constitutionally protected speech.

WHEREFORE, Plaintiff, personally and on behalf of the class members, asks the Court to award all relief to which they may be entitled in law or equity, including:

    a.    Certification of the plaintiff class pursuant to Federal Rule of Civil Procedure 23(a) and (b)(2);

    b.    Entry of final declaratory relief finding the Ordinance unconstitutional, and therefore void and unenforceable;

    c.    Entry of preliminary and final injunctive relief prohibiting the City from enforcement of the Ordinance; and

    d.    Such other relief as appropriate, including an award of costs and a reasonable attorney fee pursuant to 42 U.S.C. §1988.

### COUNT II: Individual Claim for Damages Relief
### VIOLATIONS OF THE FIRST & FOURTEENTH AMENDMENTS
### TO THE UNITED STATES CONSTITUTION
### (42 U.S.C. § 1983)

86.    Mr. Rowand incorporates and re-alleges, by reference, the allegations of the previous paragraphs of the complaint.

87.    As established by the facts and events set forth fully above, under color of state law, the City has violated and continues to violate rights, privileges, and immunities granted the Plaintiff by the First and Fourteenth Amendments to the United States Constitution by enacting and enforcing Morgantown Municipal Ordinance § 371.10, in violation of 42 U.S.C. § 1983.

88.    As described herein, Mr. Rowand has been injured and continues to suffer injuries arising from the City's multiple violations of his constitutional rights, including worry, fear, anxiety, lost donations, the incurrence of debt, and the loss of his rights.

WHEREFORE, Mr. Rowand asks the Court to award all the relief to which he is entitled in law or equity, including awarding him actual and compensatory damages, costs, and a reasonable attorney's fee.

**PLAINTIFF DEMANDS A JURY TRIAL FOR ALL ISSUES SO TRIABLE**

VERIFICATION BY ACKNOWLEDGEMENT UNDER PENALTY OF PERJURY

I, Anthony Rowand, state under penalty of perjury that I have personal knowledge of the events concerning myself as alleged above and that the allegations about those events are true.

4.22.24

Date

*Anthony Rowand* (signature)

Signature

**Respectfully submitted,
ANTHONY ROWAND,
By Counsel:**

/s/ *Lesley M. Nash*
Lesley M. Nash (WVSB #14158)
Laura C. Davidson (WVSB #13832)
Gary M. Smith (WVSB # 12602)
Mountain State Justice, Inc.
1029 University Ave., Ste. 101
Morgantown, WV 26505
Telephone: (304) 326-0188
Facsimile: (304) 326-0189
lesley@msjlaw.org